In re Donna M. POIRIER, David
A. Poirier, Debtors.

PEOPLE'S BANK, Plaintiff,

v.

Donna M. POIRIER, David
A. Poirier Defendants.

Bankruptcy No. 93–52369.
Adversary No. 93–5237.

United States Bankruptcy Court,
D. Connecticut.

Oct. 14, 1997.

Brian E. Lambeck, Law Offices of Edward D. Jacobs, New Haven, CT, for Plaintiff.

Kenneth E. Lenz, Dice & Lenz P.C., Cheshire, CT, for Defendants.

## MEMORANDUM OF DECISION ON MOTION FOR SUPPLEMENTAL JUDGMENT OF FEES AND COSTS UNDER 11 U.S.C. § 523(d)

ALBERT S. DABROWSKI, Bankruptcy Judge.

## I. INTRODUCTION

On August 24, 1994, this Court entered judgment[1] in favor of the Defendants after trial on the Plaintiff's Complaint to Determine Dischargeability of Debt (hereafter, the "Complaint"), which judgment served to preserve the dischargeability of the subject debt. In their Answer to the Complaint the Defendants prayed for, *inter alia*, a finding that "the position of the Plaintiff was not substantially justified" and an "award of court costs and defendants' reasonable attorney's fees". This request was orally renewed at trial specifically pursuant to 11 U.S.C. § 523(d). The Court then ordered that the issue be briefed by each party, and instructed Defendants' counsel to file an affidavit itemizing and detailing the fees and costs which were sought. The Court, having now received and reviewed the parties' respective briefs and the Affidavit of counsel for the Defendants, pursuant to Section 523(d), and for the reasons particularized hereafter, grants judgment in favor of the Defendants for costs and fees in the amount of $3382.74.

**1.** Judgment followed the Court's oral entry of Findings of Fact and Conclusions of Law onto

## II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b), and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).

## III. RELEVANT FACTUAL BACKGROUND

The Defendants were solicited by the Plaintiff to seek, and did eventually obtain in December 1992, an unsecured revolving credit account with a credit limit of $20,000 (hereafter, the "Account"). The Defendants' bankruptcy case was commenced on July 15, 1993 (hereafter the "Petition Date").

Between April 1, 1993 and the Petition Date, the Defendants incurred substantial charges (hereafter, the "Disputed Charges") on the Account, largely, if not entirely, through the use of "balance transfer checks". All or substantially all of the Disputed Charges were incurred to pay off or pay down credit balances with creditors (1) who arguably held purchase money security interests in property of the Defendants (e.g., Sears, Roebuck & Co., for appliance purchases) and (2) whose debts were presumably non-dischargeable in the Defendants' eventual bankruptcy case (*e.g.*, Internal Revenue Service, for income taxes).

Despite the facial appearance of the Account history, the trial testimony of the Defendants, particularly that of Donna M. Poirier, the Defendants' primary financial manager, was credible, highly persuasive, and conclusive of the fact that none of the Disputed Charges were incurred with a view toward conversion of secured and/or non-dischargeable debt into unsecured and/or dischargeable debt on the eve of bankruptcy. Rather, the Court found that each Disputed Charge was honestly incurred in an effort to consolidate debts so as to minimize finance charges, interest

the record pursuant to Fed.R.Bankr.P. 7052.

and penalties. These findings were the basis of the Court's entry of judgment in favor of the Defendants on the Plaintiff's Complaint.

The record does not reveal that an examination pursuant to Fed. R. Bankr.P.2004 (hereafter a "Rule 2004 Examination") or a deposition of either Defendant was conducted by the Plaintiff. A Rule 2004 Examination could have been conducted by Order of the Court on Motion of the Plaintiff at any time after the Defendants commenced the underlying bankruptcy case. In accordance with the Federal Rules of Bankruptcy Procedure applicable upon the commencement of this adversary proceeding, the Plaintiff could have deposed the Defendants no *earlier* than November 18, 1993. Fed. R. Bankr.P. 7030 (incorporating Fed.R.Civ.P. 30(a) (1992)). Under the initial Pretrial Order in this adversary proceeding, the Plaintiff could have deposed the Defendants no *later* than December 10, 1993.

The Defendants incurred attorney's fees payable to their counsel in connection with this adversary proceeding in the total amount of $5230.00 (plus reimbursable costs of $54.69). No fees were incurred for legal services rendered between November 15 and December 20, 1993. Fees totaling $4005.50 (plus reimbursable costs of $37.24) were incurred for legal services rendered in the period December 20, 1993 through the conclusion of trial.

### IV. DISCUSSION

Bankruptcy Code Section 523(d) provides in full as follows:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding *if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.*

11 U.S.C. § 523(d) (1993) (emphasis supplied).

### A. Derivation, Purpose and Structure of the Statute.

No direct predecessor to Bankruptcy Code Section 523(d) existed in the Bankruptcy Act. As originally enacted in 1978, Section 523(d) provided as follows:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding to determine dischargeability, *unless such granting of judgment would be clearly inequitable.*

11 U.S.C. § 523(d) (1978) (emphasis supplied). The "substantial justification" and "special circumstances" language of current Section 523(d) was substituted for the "clearly inequitable" clause in 1984. The current language was patterned upon the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (hereafter the "EAJA"), which governs claims for attorney's fees by litigants against the federal government. *Matter of Hingson,* 954 F.2d 428, 429 (7th Cir.1992); *Citizens National Bank v. Burns (In re Burns),* 894 F.2d 361, 362 n. 2. (10th Cir.1990). Therefore, recourse to judicial precedent under the EAJA—at least precedent that pre-dates the 1984 amendment to Section 523(d)—is appropriate in construing 11 U.S.C. § 523(d). *See id.*

The purpose of Section 523(d) is plain. It is intended to operate as a strong deterrent to a creditor's commencement and/or continuation of marginal or unjustified objections to dischargeability. In enacting Section 523(d) Congress recognized the usual wide disparity in litigation resources possessed by creditors and consumer debtors; a fact that might often be exploited by unscrupulous or reckless creditors. Such creditors may be tempted to bring or continue untenable dischargeability cases simply to "scare up" an installment-type settlement from a cash-poor debtor. Debtors are frequently unable to fund an adequate defense in such cases, and, therefore, may be inclined to agree to the nondischargeability of a debt in a reduced amount rather than fund the current costs of

defending the litigation. *See* H.R.Rep. No. 595, 95th Cong.2d. Sess. 131. The provision of fee awards under Section 523(d) ameliorates this potential for abuse by deterring creditor overreaching and supplying a monetary incentive for counsel to enter such cases on behalf of debtors. *See id.* at 365.

Notably, by its terms Section 523(d) can require the payment of fees by a creditor irrespective of the creditor's actual intent in commencing and/or continuing a Section 523(a)(2) action. In other words, a creditor can be liable for fees and costs under Section 523(d) even if it innocently prosecuted a substantially unjustified dischargeability complaint. This is appropriate given the statute's deterrent purpose and the difficulty of proving intent by direct evidence.

Section 523(d) provides creditors with a strong incentive to determine the existence of a basis, i.e., "substantial justification," for commencing and continuing prosecution of a dischargeability complaint. Code Sections 341 and 343 and Bankruptcy Rules 2004 and 7030 provide devices to determine that basis. The Court's Pretrial Order, compelling closure of discovery by a date certain, mandates timely use of these devices. No such discovery was taken or even attempted prior to the filing of the complaint in this proceeding, or at any time prior to the trial thereof. The conclusion of the Court, *after trial*, that the Debtors were motivated simply and honestly to consolidate debt for legitimate financial purposes, would have been blatantly obvious to the Plaintiff and its counsel had any effort been undertaken to examine, depose, or otherwise question the Debtors prior to trial. The only trial witnesses disclosed by the Plaintiff were the Debtors ("to be questioned as to their ability and intent to repay their

credit card and history of usage") and a representative of People's Bank ("to testify as to business records"). Thus, it was, or should have been, crystal clear to all involved that the adversary proceeding would turn, as it did, on the credibility and substance of the Debtors' testimony.

■ In order for Section 523(d) to operate in the manner that Congress intended, courts must be willing to apply its terms in a straight-forward manner. The Court's analysis is essentially a two-step process. First, if the creditor has lost [2] or abandoned [3] its Section 523(a)(2) action, the Court must determine if the "position of the creditor was . . . substantially justified". If the Court finds that there was not substantial justification, it must next consider whether Section 523(d)'s fee and cost award should be mitigated, in whole or part, due to the presence of "special circumstances". Stated more succinctly, if "substantial justification" is absent, the statute mandates [4] an award of all the costs of litigation, including reasonable attorneys fees [5], unless "special circumstances" compel mitigation of those amounts.

## B. Burden of Proof.

■ Although debtor-defendants must shoulder the ultimate burden of persuading the court of their entitlement to costs and fees under Section 523(d), once they establish (1) that the creditor-plaintiff requested a determination of the dischargeability of a consumer debt, and (2) that the debt nonetheless was discharged, the burden of production then shifts to the creditor-plaintiff on the questions of "substantial justification" and "special circumstances". *See, e.g., AT&T Universal Card Service, Inc. v. Kennedy (In*

---

**2.** This would include the following dispositions, *inter alia:* (1) adverse judgment after trial, (2) adverse summary judgment, and (3) involuntary dismissal under Fed. R. Bank. P. 7012(b).

**3.** This would include both voluntary dismissals and passive failures to prosecute.

**4.** Although the clear purpose of the 1984 amendment to Section 523(d) was to increase the court's discretion not to award fees and costs under appropriate circumstances, the award is still mandatory if the statutory exceptions are not

found. *Household Finance Corp. v. VanBuren (In re VanBuren)*, 66 B.R. 422, 424–25 (Bankr. S.D.Ohio 1986).

**5.** An argument could be made that Section 523(d) contemplates the awarding of traditional court *costs* and counsel *fees*, but not litigation *expenses.* Congress has demonstrated in analogous contexts its recognition of and provision for all three classes of financial award to prevailing parties. *E.g.* EAJA (providing for "costs", 28 U.S.C. § 2412(a), "fees and *other expenses* ", 28 U.S.C. § 2412(d)(1)(A) (emphasis supplied)).

*re Kennedy),* 1994 WL 721508, *4–6 (D.Kan. Dec. 27, 1994); *FCC National Bank v. Dobbins (In re Dobbins),* 151 B.R. 509, 511 (W.D.Mo.1992); *Chrysler First Financial Services Corp. v. Rhodes (In re Rhodes),* 93 B.R. 622, 624 (Bankr.S.D.Ill.1988); *In re Woods,* 69 B.R. 999, 1001 (Bankr.E.D.Pa. 1987). The Defendants have easily met their initial burden of production. Thus, the Court must now turn to inquire whether the Plaintiff has met its burden of establishing that its position was "substantially justified" and/or that "special circumstances would make the award unjust".

## C. Substantial Justification.

The United States Supreme Court has construed the term "substantially justified" under the EAJA. *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490, (1988). In construing this phrase the Supreme Court considered Congress' use of a form of the inherently ambiguous word "substantial". The Court noted that the term is susceptible of two nearly contrary definitions:

> On the one hand, it can mean "[c]onsiderable in amount, value, or the like; large," Webster's New International Dictionary 2514 (2d ed.1945)—as, for example, in the statement, "He won the election by a substantial majority." On the other hand, it can mean "[t]hat is such in substance or in the main," ibid.—as, for example, in the statement, "What he said was substantially true."

*Id.* at 564, 108 S.Ct. at 2549.

The Supreme Court resolved this ambiguity in favor of the connotation, "justified in substance or in the main" *Id.* at 565, 108 S.Ct. at 2550. In so doing the Court relied on previous judicial constructions of the term "substantial" in similar legislation, including the Supreme Court's own rendering of the phrase, "substantial evidence" found in the Administrative Procedure Act, to wit: "That phrase does not mean a large or considerable amount of evidence, but rather 'such evidence as a *reasonable mind* might accept as adequate to support a conclusion.'" *Id.* at 564–65, 108 S.Ct. at 2559 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197,

229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)) (emphasis supplied). In light of this conclusion, the Supreme Court construed "substantially justified" to mean "justified to a degree that could satisfy a reasonable person." *Id.* at 565, 108 S.Ct. at 2550. Although *Pierce* was decided in 1988, its reasonableness standard is consistent with EAJA precedent predating the 1984 amendment to Section 523(d). *Id.* at 565–66, 108 S.Ct. at 2550–51.

■ Thus, the relevant inquiry is objective, ultimately turning upon an assessment of reasonableness. This assessment does not focus solely upon the time when the creditor files its complaint. In fact the statute literally imposes no temporal boundaries on that assessment. If at any point in the prosecution of a plaintiff's case, that case fails to be substantially justified, the plaintiff is subject to Section 523(d) sanctions. *See American Savings Bank v. Harvey (In re Harvey),* 172 B.R. 314, 319 (9th Cir. BAP 1994); *Manufacturers Hanover Trust Co. v. Hudgins,* 72 B.R. 214, 221 (N.D.Ill.1987).

■ The Court concludes that the position of the Plaintiff in the instant litigation was not substantially justified; that is to say that the trial testimony and documentary evidence overwhelmingly supported the unreasonableness of the Plaintiff's position. At the very least, the Plaintiff has not carried its burden of demonstrating substantial justification for its position. Given this conclusion, the Court must presumptively award the Defendants their costs ($54.69) and *entire* attorneys fee ($5230.00) since the Court finds their attorney's billing rate and practices in this action to be reasonable. However, as noted *supra,* a conclusion of no substantial justification does not end the inquiry under Section 523(d). The presence of "special circumstances" may serve to rebut and mitigate the presumptive award in whole or part.

## D. Special Circumstances.

Unfortunately for a trial court such as the Bankruptcy Court in this case, the definition, and standards applicable to a determination, of "special circumstances" are not well-developed. Some appellate authority instructs that special circumstances be interpreted

with reference to traditional equitable principles. *Hingson, supra,* 954 F.2d at 430 (quoting *Oguachuba v. INS,* 706 F.2d 93, 98–99 (2d Cir.1983) (decided under EAJA)). In determining the matter before it, this Court accepts that guidance in its broadest sense, and finds a special circumstance in this case.

■ With regard to the commencement of the instant adversary proceeding, this Court notes that under appropriate surrounding circumstances, conversion of secured and/or non-dischargeable debt into unsecured dischargeable debt on the eve of bankruptcy can support a finding of "false pretenses, false representation or actual fraud" sufficient to render the resulting debt nondischargeable under 11 U.S.C. § 523(a)(2)(A). Absent Defendant Donna Poirier's explanation of the Disputed Charges, a reasonable creditor could conclude that illicit conversion of debt had occurred to its detriment.

Further, this Court recognizes the difficulty facing individual creditors in obtaining thorough oral statements from debtors under oath at Section 341 meetings of the underlying facts of potential dischargeability actions. Bankruptcy Code Section 343 requires a debtor to attend and submit to examination under oath at the meeting of creditors held pursuant to Section 341. Facts related to an allegedly nondischargeable debt are well within the scope of a Section 341 examination. However, due to time constraints and the number of parties in interest often in attendance, a debtor's Section 341 examination rarely presents a sufficient opportunity for an individual creditor to fully explore all underlying facts of potential dischargeability. Therefore, after the Section 341 examination, even though the Plaintiff did not attend and attempt to question the Debtor, the Plaintiff had good cause to consider filing the Complaint, and a reasonable basis to believe the claims stated therein might be "substantially justified" *at that time.* Viewed from this perspective, the bare non-testimonial factual record existing prior to the commencement of this adversary proceeding supported the Plaintiff's initial position and constitutes a damage-mitigating circumstance within the meaning of Section 523(d).

Notwithstanding the foregoing, the Court concludes that the Plaintiff had within its power the means—through a Bankruptcy Rule 2004 examination—to reasonably determine that its initial position, based solely upon an assessment of the unexplained Disputed Charges, was not substantially justified.

Attorneys representing plaintiffs are obligated, of course, to pursue all reasonable claims vigorously and aggressively. At the same time, however, a plaintiff cannot continue the pursuit of a legal process when, at any time, it becomes evident that the premise upon which such process was initiated is untenable. Continued resort to litigation in such circumstances serves no legitimate purpose. Indeed, the only consequence is often, as it was in this case, the unnecessary infliction of emotion distress and financial hardship on the defendant. Moreover, pursuit of baseless claims adds to the already overwhelming crush of litigation before the courts, impedes the due and proper administration of justice, and impacts adversely all legitimate parties entitled to access to the court.

Procedural devices affording discovery, including Rule 2004 Examinations and the ability to notice and conduct depositions, were enacted to guarantee the orderly, efficient and fair administration of justice. These broad-based discovery mechanisms provide a ready means to determine the requisite justification to prosecute, and continue to prosecute, a dischargeability complaint. The broad scope and ready availability of a Rule 2004 Examination provides a forum for an individual creditor to question a debtor at great length on all matters relevant to the debtors's financial affairs including "the debtor's right to a discharge." Fed. R. Bankr.P. 2004(b). Such an examination could have been conducted in this case at any time between the filing of the petition and the bar date for filing a complaint objecting to the dischargeability of debts. That bar date itself could have been extended on timely motion of the Plaintiff thereby providing ample opportunity for the Plaintiff to ascertain substantial justification for its claim. Following the filing of a complaint, plaintiffs are provided a similar discovery mechanism through the deposition process. In view of the "sub-

stantial justification" language of Section 523(d), a plaintiff ignores at its peril the availability and benefit of witness examination devices.

After the period had passed within which the Plaintiff could have, and in this case should have, conducted a Rule 2004 Examination or deposition of the Debtors, its claims were no longer "substantially justified" since such an inquiry would have served to inform a reasonable litigant of the untenable nature of its claims. In essence, the Court concludes that the Plaintiff's presumed failure to conduct discovery by oral deposition or Rule 2004 Examination of the only critical witness prior to trial tolls and terminates whatever "special circumstances" protection it enjoyed by virtue of the "unexplained" nature of the Disputed Charges. *See First Card v. Leonard (In re Leonard)*, 158 B.R. 839, 846 (Bankr.D.Colo.1993).

An award of reasonable attorneys fees and costs incurred after the Pretrial Order's deposition deadline of December 10, 1993 is warranted in this case.[6] Specifically, such fees and costs include those rendered and incurred by counsel for the Defendants from December 10, 1993 through the conclusion of the trial in this adversary proceeding, that is, $4005.50 plus $37.24, respectively. However, such sum should be reduced by $660.00 (four(4) hours × $165.00/hour)—an amount reflective of the fees that would have been charged by the Defendants' counsel to prepare for and attend a Rule 2004 Examination or a deposition in this proceeding.

The foregoing shall constitute this Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr.P. 7052. Accordingly,

*IT IS HEREBY ORDERED* that a supplemental judgment shall enter in favor of the Defendants and against the Plaintiff in the amount of $ 3382.74.

---

**6.** Nothing in this Memorandum of Decision should be construed as a disinclination of the Court, in future cases under compelling circumstances, to award all fees and costs incurred post-complaint. Nor should this Memorandum of Decision be read to require depositions or Rule 2004 Examinations as a prerequisite to a request for the determination of the dischargeability of a consumer debt in all or even most cases.